IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SOVEREIGNTY JOESEPH HELMUELLER
SOVEREIGN FREEMAN,

                        Plaintiff,                        OPINION and ORDER

    v.

                                                                22-cv-455-jdp

SGT. JOSEPH BRADAC,

                        Defendant.

---

Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman, appearing pro se, is incarcerated at Waupun Correctional Institution. Helmueller alleges that when he was detained at the St. Croix County Jail, defendant Sergeant Joseph Bradac unreasonably subjected him to the risk of contracting COVID-19 when transporting him to a dentist appointment without a face mask. Helmueller brings a claim under the Fourteenth Amendment to the United States Constitution.

This order addresses several filings by both parties.

**A. Motion for summary judgment on exhaustion grounds**

Defendant Bradac has filed a motion for summary judgment arguing that Helmueller failed to exhaust his administrative remedies before filing this lawsuit. Dkt. 24.

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all available administrative remedies before filing a lawsuit in federal court about prison or jail conditions. 42 U.S.C. § 1997e(a). To comply with § 1997e(a), a prisoner must take each step in the administrative process, *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282,

284–85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require," *Pozo*, 286 F.3d at 1025. The purpose of these requirements is to give the jail administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proven by the defendant. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).

Bradac contends that Helmueller failed to exhaust his administrative remedies on his claim. Jail regulations state that a prisoner must file a grievance within 24 hours of the incident, using an electronic kiosk. If the prisoner gets an adverse response, he must file two rounds of appeals.

Helmueller filed a grievance about the incident on January 19, 2022, nine days after the events. (Bradac suggests that the grievance was filed "around" January 20, but the electronic grievance records themselves show that it was "reported" on January 19.) The grievance was dismissed, with the response stating that masks are not mandated in the jail, that he would have been provided a mask had he asked for one, and that he couldn't prove that he got COVID from the incident. Dkt. 27-2, at 1. The examiner set the grievance status to "closed." Helmueller followed with a second grievance indicating frustration with not being able to appeal the first grievance because the "officer did not identify themselves by name/rank" and "did not leave option to appeal to the sheriff." *Id.* at 2. An administrator replied, stating, "This is not now the appeal process works." *Id.* Helmueller filed a third grievance, again asking an officer to identify themself and "allow[him] to appeal to the sheriff." *Id.* at 3. An administrator responded in part, "If you would like to appeal a Grievance please type that up on the Kiosk." *Id.* Helmueller did not follow up with an appeal.

Bradac first argues that Helmueller failed to timely file his grievance, waiting until ten days after the incident. But Helmueller states that he was extremely ill after the exposure and he didn't test positive for COVID until a day before he filed the grievance. And staff did not reject the grievance as untimely, they instead responded to it on the merits. I conclude that Helmueller properly exhausted that portion of the process. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) ("if prison administrators choose to consider the merits of an untimely grievance, then the claim has been exhausted").

Regardless of the initial grievance, it is undisputed that Helmueller didn't file a formal appeal. Helmueller raises a variety of arguments in opposition, most of which fail. He states that there have been times that jail staff blocked his access to the grievance system or failed to respond to some of the grievances or appeals he filed. But this sort of general statement falls short of explaining that Helmueller was blocked from the grievance process at the relevant time here. And the evidence suggests that he was not: he was able to file grievances and follow-ups on the kiosk, and staff responded to them. Helmueller also suggests that the grievance system doesn't apply to events occurring outside the jail walls, but nothing in the county's jail procedure states that, nor does it make sense to exempt inmates from filing grievances about jail officials' misdeeds if they are done out of the jail.

Helmueller does make one argument with more traction. He states that the electronic grievance system wouldn't let him file an appeal on the kiosk because staff gave his grievance "closed" status. *See* Dkt. 27-2, at 2. Both of Helmueller's follow-up grievances state that he couldn't file an appeal. In response to the second follow-up, a staff member told him to appeal by using the kiosk while noting that the grievance was "closed" appropriately. In his reply, Bradac attaches a declaration from a staff member who states, "A grievance being closed on the

Kiosk system does not prevent an inmate from appealing that grievance using either the Kiosk or paper forms." Dkt. 39, at 1.[1] Bradac also states that Helmueller had filed grievances on paper forms or his own blank paper in the past. I take Bradac to be arguing that Helmueller could have used the kiosk to file an appeal but otherwise could have used a paper form or even his own paper to file an appeal.

Helmueller states that paper forms weren't available to him at that time, and in any event, the jail's grievance policy says nothing about using paper forms or an inmate's own paper. Rather, it states to use the kiosk. Dkt. 27-1, at 8 ("If you have a grievance issue you may fill out a grievance on the kiosk within 24-hours of the incident or event that is the basis for the grievance. . . . [Y]ou may make a written appeal on the kiosk by replying to the grievance.") That's also what the staff member told Helmueller to do in response to his second follow-up. I will hold jail officials to their rules, and Helmueller cannot be forced to use remedies that are unavailable to him. *See Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (prison officials that fail to "clearly identif[y]" the proper route for exhaustion cannot fault prisoner for failure to make the correct choice); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes unavailable if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." (citation omitted)).

But that still leaves the question whether Helmueller could have used the kiosk to file an appeal. He says he couldn't. Bradac conclusorily states that Helmueller could have used the

---

[1] Bradac filed a motion for extension of time to file his reply brief, Dkt. 32, that I will deny as moot because Bradac filed his reply within the deadline for doing so.

kiosk, but he doesn't provide any detail necessary to explain how Helmueller would have gone about doing that. This appears to be a factual issue with a clear answer that should not need a hearing to resolve. I will direct Bradac to submit a supplement to his motion explaining (1) precisely how the kiosk system works and how Helmueller could have filed an appeal; and (2) how a jail inmate would know how to file an appeal using the kiosk. I will give Helmueller a chance to respond. The parties' submissions do not need to include formal proposed findings of fact, but the parties should file declarations or affidavits explaining the relevant facts, along with supporting evidence.[2]

**B. Motions to compel discovery**

Helmueller has filed a motion to compel discovery, stating that Bradac did not respond to his first set of discovery requests. Dkt. 45. But Helmueller did not properly serve Bradac by mailing the discovery requests directly to him, instead he sent them to the court. Because Helmueller failed to properly serve Bradac with the discovery requests, I will deny his motion to compel.

Helmueller has also filed a series of affidavits stating that Bradac has failed to properly respond to another set of discovery requests—this set appears to have been properly served upon Bradac because Helmueller attaches Bradac's responses to them. *See* Dkts. 61, 62, 68, 69. Only one of these documents, Dkt. 62, sets forth the specific problems that Helmueller has with Bradac's discovery responses. I will construe that document as a motion to compel discovery and have Bradac respond to that one.

---

[2] Helmueller has filed a motion that he calls a "request for extension" of time, Dkt. 49, but what really is a request to file a sur-reply on the question of exhaustion. I will deny that motion because Helmueller will be given a chance to respond to Bradac's supplemental filing.

### C. Motion for sanctions

Helmueller followed with a motion to sanction Bradac's counsel for what he believes is "dishonest conduct" or "perjury," stating that (1) Bradac received a copy of his discovery requests through the court's docket; and that (2) counsel is retaliating against him by sending him mail in envelopes without a return address, which his current prison will not accept.

I will deny Helmueller's motion for sanctions. As I have already explained, Helmueller is required to mail Bradac copies of his filings in this case; his submission of discovery requests directly to the court was not enough to properly serve Bradac. As for Helmueller's allegations about Bradac failing to place return addresses on envelopes, counsel concedes that envelopes sent in April or May 2023 may not have had a return address. But counsel states that this was simply an oversight caused by office personnel's unfamiliarity with labeling software or by a computer glitch, and that copies of any missing materials were re-sent to Helmueller. There isn't any reason to think that counsel's actions were malicious so I will not sanction her. Although counsel states that she sent Helmueller copies of the items that were returned, I will have the clerk of court send Helmueller a docket sheet so that he may identify any items that he did not receive. The clerk of court will then send new copies to plaintiff.

### D. Medical authorization

Helmueller has filed what he calls a motion to determine the sufficiency of forms Bradac has sent him asking him to authorize the release of various records from medical providers and previous places of incarceration. Dkt. 64. Helmueller argues that the forms are too broad.

I will grant Helmueller's motion and set out some of the problems that I see with the forms, although the parties have not provided enough information for me to issue a formal ruling on the matter. This court routinely tells the litigants that it won't issue an order forcing

6

a plaintiff to sign authorizations regarding medical records because the court won't force a plaintiff to turn over medical information; if Helmueller would rather maintain the privacy of his medical information, he is free do so. But it would be unfair to Bradac to defend against Helmueller's claim without this information. Helmueller's ultimate choice is either to share the relevant information with Bradac or have the case dismissed.

But the key word here is *relevant*. The information Bradac seeks appears far too broad to reasonably be called relevant to his claim about being exposed to COVID-19 in January 2022. The forms have no designated time frame and ask for Helmueller's entire medical file from various institutions, including psychological and psychiatric records, alcohol and drug treatment records, and HIV or AIDS test results, which would seem to have no relation to the claim at hand. Bradac also seeks non-medical records including Helmueller's prison social service file and juvenile records included in his adult file. In his response, Bradac fails to offer any persuasive reason why he needs to review such a broad range of records to litigate this case.

If Bradac believes that any of this information is truly relevant to Helmueller's claim, he should promptly file a motion explaining with specificity why those documents are necessary to litigate this case. Otherwise, he should discuss with Helmueller the scope of documents he needs and edit the authorizations to limit his requests to relevant information and to a reasonable timeframe before and after the incident at issue.

E. **Recruitment of counsel**

Helmueller has filed a motion for appointment of counsel. Dkt. 60. As Helmueller should know from my previous denials of similar motions in other recent cases he has filed, I do not have the authority to appoint counsel to represent a pro se plaintiff in a civil matter.

7

Rather, I can only assist in recruiting counsel who may be willing to serve voluntarily. *See* 28 U.S.C. § 1915(e)(1); *Pruitt v. Mote*, 503 F.3d 647, 654, 656 (7th Cir. 2007) (en banc). To show that it is appropriate for the court to recruit counsel, a plaintiff must (1) show that he cannot afford a lawyer, (2) provide the names and addresses of at least three lawyers who have declined to represent him in this case; and (3) demonstrate that his is one of those relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds his demonstrated ability to prosecute it. *See, e.g.*, *Santiago v. Walls*, 599 F.3d 749, 760–61 (7th Cir. 2010).

Helmueller is proceeding in forma pauperis and he attaches letters from several attorneys who have declined to represent him, so he has met the first two requirements. But I will deny his motion because I am not convinced that this case is too complex for him. His filings in these and other cases have not shown that his abilities are below those of the hundreds of prisoners who bring civil rights cases in this court each year. He states that he is being denied law library access and that he is at the end of his legal loan. These factors might be reasons to extend a deadline to submit a filing or to inquire further about the nature of the prison's mailing restrictions, but they alone are not reasons to recruit counsel. Helmueller has not appeared to have any problems prosecuting this case so far; he has filed dozens of submissions. And part of his money problem is clearly caused by his desire to litigate multiple lawsuits at the same time; at present he has eight open civil cases in this court. "[P]risoners do not have a right to receive assistance from prison officials to file an unlimited number of lawsuits regardless of the cost." *Ripp v. Nickel*, 838 F. Supp. 2d 861, 866 (W.D. Wis. 2012). Rather, "like any other civil litigant, [a prisoner] must decide which of his legal actions is important enough to fund."

*Johnson v. Foster*, 786 F.3d 501, 507 (7th Cir. 2015) (quoting *Lindell v. McCallum*, 352 F.3d 1107, 1111 (7th Cir. 2003)).

I will deny Helmueller's motion without prejudice, which means that he can ask for counsel again if he continues to believe that he is unable to litigate a particular lawsuit himself. But if he does ask for counsel again, he will need to explain what specific litigation tasks he cannot perform himself and why the lawsuit is too complex for him to litigate.

ORDER

IT IS ORDERED that:

1. Defendant Joseph Bradac's motion for extension of time to file his reply brief, Dkt. 32, is DENIED as moot.

2. Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman's motion to file a sur-reply, Dkt. 49, is DENIED.

3. Defendant may have until November 3, 2023, to submit a supplement to his motion for summary judgment on exhaustion grounds. Plaintiff may have until November 17, 2023, to file a response.

4. Plaintiff's first motion to compel discovery, Dkt. 45, is DENIED.

5. Defendant may have until November 3, 2023, to respond to plaintiff's second motion to compel discovery, Dkt. 62. Plaintiff may have until November 17, 2023, to file a reply.

6. The clerk of court is directed to send plaintiff a copy of the docket sheet, for plaintiff to identify any filings that he did not receive because of improperly addressed envelopes from defendant.

7. Plaintiff's motion for clarification regarding requests for authorization of records, Dkt. 64, is GRANTED.

9

8. Plaintiff's motion for recruitment of counsel, Dkt. 60, is DENIED without prejudice.

Entered October 17, 2023.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge