IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SOVEREIGNTY JOESEPH HELMUELLER
SOVEREIGN FREEMAN,

                Plaintiff,                OPINION and ORDER

  v.

                                              22-cv-455-jdp

SGT. JOSEPH BRADAC,

                Defendant.

---

Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman, without counsel, alleges that when he was detained at the St. Croix County Jail, defendant Sergeant Joseph Bradac unreasonably subjected him to the risk of contracting COVID-19 when transporting him to a dentist appointment without a face mask. Helmueller brings a claim under the Fourteenth Amendment to the United States Constitution.

This order addresses Bradac's motion for summary judgment on exhaustion grounds and Helmueller's motion to compel discovery.

**A.  Bradac's motion for summary judgment on exhaustion grounds**

Defendant Bradac filed a motion for summary judgment contending that Helmueller failed to exhaust his administrative remedies before filing this lawsuit. Dkt. 24. I previously concluded that Helmueller properly exhausted the first step of the process by filing a grievance in January 2022. Dkt. 71, at 3. But it was undisputed that Helmueller did not appeal the denial of that grievance. Helmueller stated that he was unable to file a formal appeal because the grievance was marked "closed." Bradac stated that a grievance being closed didn't prevent an inmate from appealing it, but he didn't explain how Helmueller could have done so. I directed Bradac to submit supplemental briefing explaining (1) precisely how the kiosk system works

and how Helmueller could have filed an appeal; and (2) how a jail inmate would know how to file an appeal using the kiosk. *Id.* at 5.

Bradac has submitted a supplemental brief, Dkt. 73, supported by a declaration from Joseph Kormanik, a lieutenant at the jail, Dkt. 74. Kormanik states that a grievance appeal is ordinarily taken by "clicking reply on the kiosk system," but sometimes grievances are "closed," in which case the inmate may appeal by filing a brand-new grievance—with a brand-new number different from the original grievance—and staff would then follow-up with the inmate if it was unclear which previous grievance the appeal applied to. *Id.* at 1–2. Kormanik asserts that this is the jail's procedure but he doesn't cite any regulation stating that or otherwise explaining how an inmate would know to file a brand-new grievance when the normal "reply" feature is unavailable for closed grievances. (The jail's inmate handbook says only that "you may make a written appeal on the kiosk by replying to the grievance." Dkt. 27-1, at 33). But Kormanik says that Helmueller knew to appeal with a new grievance because he had done so several times before; he attaches examples from February to May 2021 in which Helmueller used new grievances to file appeals of other denied grievances. Dkt. 74-1.

Helmueller responded to Bradac's supplemental materials with both a substantive response and a motion to strike the supplement, arguing that Kormanik hadn't been disclosed as an expert witness or filed a notice of appearance, and that he signed the declaration with an electronic signature. None of these objections have any merit; it is completely routine for a party to submit an electronically signed declaration of a non-party with personal knowledge of relevant information. I will deny Helmueller's motion to strike.

On the substance, Helmueller states that the examples of his appeals from February to May 2021 are irrelevant because in August 2021 the jail switched from a "tablet" system to

the kiosk system. Bradac doesn't address this in any of his filings, but the grievance-system printouts from Helmueller's February–May 2021 grievances look different than the printouts from Helmueller's January 2022 grievances at issue here, supporting Helmueller's assertion that they were produced by different systems.

After considering the parties' original briefing and supplemental filings, I conclude that Bradac has not met his burden to show that Helmueller failed to exhaust his administrative remedies.

To start with, it's counterintuitive to suggest that a grievance may be appealed with a brand-new grievance bearing a different number. Nonetheless, if prison policies explicitly explained that this was the method for appealing closed kiosk grievances, Helmueller would have to follow that procedure. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). But neither Bradac nor Kormanik cite an explicit regulation confirming this policy, and it's directly contradicted by the handbook, which says that appeals are taken by replying to the original grievance, a step unavailable to Helmueller.

I infer that Bradac means that the jail maintained an unofficial policy mandating that closed grievances could be appealed with new grievances, and that Helmueller knew about this policy, as indicated by his February–May 2021 grievances. There are two problems with this argument. First, Bradac doesn't point to any authority suggesting that exhaustion hinges on an inmate's understanding of how to respond to a prison's unofficial practice. And second, Helmueller has evidence to suggest that the grievance system changed between his February–May 2021 grievances and the January 2022 grievances at issue here.

3

Based on my review of Helmueller's January 2022 grievances, the only reasonable inference is that Helmueller was not aware that he could appeal a closed kiosk grievance by filing a brand-new grievance. Helmueller *did* file new grievances about the denial of his initial grievance, but rather than using those grievances to formally appeal, he expressed frustration at not being able to appeal. He filed a grievance stating that he couldn't appeal because the "officer did not identify themselves by name/rank" and "did not leave option to appeal to the sheriff." Dkt. 27-2*,* at 2. An administrator replied, stating, "This is not now the appeal process works." *Id.* Helmueller filed a third grievance, again asking an officer to identify themself and "allow[him] to appeal to the sheriff." *Id.* at 3. An administrator responded in part, "If you would like to appeal a Grievance please type that up on the Kiosk." *Id.* Rather than treating his later grievances as appeals, explicitly directing him to appeal with a brand-new grievance, or pointing him to the specific regulation that he should have followed, staff gave him unhelpful or ambiguous answers.

Courts hold jail officials to their rules, and Helmueller cannot be forced to use remedies that are unavailable to him. *See Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (prison officials that fail to "clearly identif[y]" the proper route for exhaustion cannot fault prisoner for failure to make the correct choice); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes unavailable if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." (citation omitted)). Without any evidence showing that county officials adopted a formal policy mandating the use of brand-new grievances to file appeals or that Helmueller was aware that he could appeal a closed kiosk grievance that way, I conclude that Bradac has not met his

4

burden of proving that Helmueller failed to exhaust available administrative remedies. I will deny his motion for summary judgment on exhaustion grounds.

## B. Helmueller's motion to compel discovery

In my previous order I denied Helmueller's formal motion to compel discovery, Dkt. 45, because at that point he had failed to properly serve his discovery requests on Bradac. Dkt. 71, at 5. But I construed one of Helmueller's later affidavits about his requests for production of documents, Dkt. 62, as a motion to compel and I directed Bradac to respond to it. *Id.*

The same day that I issued that order, Bradac filed a response to Helmueller's various discovery motions. Dkt. 70. Bradac didn't submit another filing responding directly to my order, so I infer that he means to stand on his previous response. His position is largely the same that county officials took in another of Helmueller's cases regarding events at the jail: Bradac does not possess the materials that Helmueller seeks and he is not the legal custodian of those materials.

My ruling on Helmueller's motion to compel will be the same as in that previous case. *See Helmueller v. Johnson*, No. 22-cv-556-jdp, 2024 WL 307509, at *4 (W.D. Wis. Jan. 26, 2024). Under Federal Rule of Civil Procedure 34(a)(1), discovery is limited to materials in a party's "possession, custody, or control." Generally, in similar cases in this court involving state or municipal defendants, defendants provide the type of discovery requested here as a courtesy to plaintiffs and to avoid having the government entity that employs the defendants receive a torrent of subpoenas. But Rule 34 doesn't require defendants to produce materials merely because they have access to those materials through their employment; the question is whether "the party has a legal right to obtain them," not just the "practical ability" to obtain them. *Dexia Credit Loc. v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004) (internal quotation omitted);

5

*see also Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 838–39 (7th Cir. 2014) (citing test for control in *Dexia*). Courts in this circuit have concluded that prison employees are not required to obtain those documents from their employer. *Robinson v. Moskus*, 491 F. Supp. 3d 359, 366 (C.D. Ill. 2020) (Illinois Department of Corrections employees cannot be compelled to produce DOC's documents); *Armour v. Santos*, No. 19-cv-678, 2022 WL 16572006, at *3 (S.D. Ill. Nov. 1, 2022) (same).

So as a general matter, Bradac does not have to obtain and then turn over the material Helmueller seeks. But it would be unusual for a defending party not to have already acquired some of the material that Helmueller seeks. In particular, it is unclear whether the parties have resolved their earlier dispute about Helmueller authorizing the release of his medical records. If Helmueller has authorized release of those records and Bradac has obtained them, then Bradac is required to make them available to Helmueller.

I will give Bradac a short time to respond to this order, confirming whether he possesses any of the material Helmueller seeks, and if so, to produce that material. Otherwise, Helmueller will have to seek this material directly from the county, his medical providers, or other entities having control over the items, whether by subpoena or other avenue.

I will deny without prejudice Helmueller's motion to compel regarding one category of materials: Bradac's disciplinary records. At this point of the proceedings the only purpose those records would serve would be inadmissible prior bad acts evidence under Federal Rule of Evidence 404. At trial, these records might be relevant to credibility determinations. If this case proceeds past summary judgment, then Helmueller should renew his request for those records; the court would reconsider the relevance of those documents and if necessary, review

sealed version of those records before turning them over to Helmueller or placing them on the public docket.

ORDER

IT IS ORDERED that:

1. Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman's motion to strike, Dkt. 76, is DENIED.

2. Defendant Joseph Bradac's motion for summary judgment on exhaustion grounds, Dkt. 24, is DENIED.

3. Plaintiff's motion to compel discovery, Dkt. 62, is GRANTED in part. Defendant may have until March 5, 2024, to respond to this order regarding discovery materials in his possession.

Entered February 20, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge