IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SOVEREIGNTY JOESEPH HELMUELLER
SOVEREIGN FREEMAN,

                      Plaintiff,                      OPINION and ORDER

  v.

                                                  22-cv-455-jdp

SGT. JOSEPH BRADAC,

                      Defendant.

---

Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman, proceeding without counsel, is currently incarcerated at Waupun Correctional Institution. Helmueller alleges that when he was detained at the St. Croix County Jail, defendant Sergeant Joseph Bradac caused him to contract COVID-19 by transporting him to a dentist appointment without a face mask. Helmueller brings a claim under the Fourteenth Amendment to the United States Constitution.

Currently before the court are a series of submissions, including Bradac's motion for summary judgment. Dkt. 89. I will grant that motion and dismiss the case because Helmueller does not provide evidence that could lead a reasonable jury to conclude that his COVID-19 infection was caused by Bradac's conduct.

PRELIMINARY MATTERS

A.  **Response to February 20 order**

In a February 20, 2024 order, I considered a motion to compel discovery filed by Helmueller. Dkt. 62 (Helmueller's motion to compel); Dkt. 86 (my order). I concluded that although Bradac was not required to produce materials merely because he had access to those materials through his employment, it would be unusual for a defending party not to have

already acquired some of the material that Helmueller sought and that Bradac would have to make those materials available to Helmueller if Bradac had obtained them. Dkt. 86, at 6. I directed Bradac to respond to my order by confirming whether he possessed any of the material Helmueller sought, and if so, to produce that material. *Id.*

Bradac did not respond to that order directly to the court, so I gave him a final chance to do so. Dkt. 119, at 2. I also directed Bradac to ask county officials to perform another search of their archives for any video footage of the events at issue and to report back to the court. *Id.* at 3.

Bradac has responded, stating that he disclosed various materials to Helmueller shortly after my February 20 order, Dkt. 120, and that the county records technician's further searches for additional video footage revealed no new footage, Dkt. 121. Bradac's responses satisfy me that he has met his discovery obligations.

**B. Scope of video footage**

Helmueller moves to strike the declaration of Captain Justin Johnson authenticating attached bodycam videos submitted by Bradac as part of the materials supporting his motion for summary judgment. Dkt. 101 (Helmueller's motion); Dkt. 93 (Johnson's declaration). Helmueller contends that Johnson's testimony is expert testimony that Bradac didn't disclose by the expert-disclosure deadline. But Johnson's statements explaining his responsibilities in retrieving and saving bodycam footage are not expert testimony; they are merely his account of the county's procedures. I note further that in his summary judgment responses Helmueller doesn't actually argue that the videos are inauthentic. I will deny Helmueller's motion to strike Johnson's declaration and the videos.

**C. Motion to seal video footage**

Bradac moved to seal the video footage showing the interior of the jail and procedures used in transporting inmates. Dkt. 88. I directed the clerk of court to seal the videos containing footage of the interior of the jail (Dkts. 93-1; 93-2; 93-5, labeled as Exhibits 1A, 1B, and 1E), in part because of security concerns and in part because it was unclear which portions of those videos would be material to Helmueller's claims. Dkt. 119, at 2. I stated that I would consider whether to unseal those videos after ruling on Bradac's summary judgment motion. *Id.*

Having reviewed the parties' summary judgment materials, I conclude that the jail videos should remain sealed to protect the security of the jail. That footage has only marginal relevance to my analysis of Bradac's summary judgment motion, and my description of that footage in this order should be enough for the public to understand the details of the case without having access to the footage. Either party or any interested member of the public may move to unseal that footage.

I will turn to Bradac's summary judgment motion.

UNDISPUTED FACTS

I draw the following facts from the parties' proposed findings of fact and video footage of the events. These facts are undisputed unless otherwise noted.

Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman was an inmate at the St. Croix County Jail in January 2022. Defendant Joseph Bradac was a jail sergeant.

On January 10, 2022, Helmueller had a 7:30 a.m. dental appointment in Hudson, Wisconsin, about ten minutes away. Defendant Bradac and non-defendant Deputy Zackary Henricks escorted Helmueller to and from the dental appointment in a transport van.

Henricks's bodycam captured footage from most but not all of the events. In particular, there is a gap in recording between the officers' preparations to leave the jail and their entry with Helmueller into the dentist's office.

Neither Helmueller nor the officers wore a mask at the jail, in the van, or at the dentist's office. Jail policy did not mandate that officers or inmates wear masks. Bradac states that there were masks available at the jail and in the transport van should an inmate ask for one. The parties dispute whether Helmueller ever asked for a mask. He says that he asked Bradac for one after they walked into the office building in which the dentist's office was located, and that Bradac responded, "You don't need a mask Helmueller you'll be fine" or "we will be in there in two minutes you don't need one," Dkt. 111, at 17–18 (there is no video footage from this part of the events). Bradac and Henricks state that Helmueller never asked for a mask.

The dental appointment took about an hour, with Helmueller having two teeth removed. The receptionist, hygienist, and dentist wore masks during the visit. The only other person they encountered during the trip was a person entering the office building several seconds before they exited the building to go back to the jail.

Helmueller tested positive for COVID-19 about a week after the dental appointment and he became severely ill.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Because Helmueller was a pretrial detainee at the time of the events, his claims fall under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, not the Eighth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–400

(2015); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). Jail staff violate the Fourteenth Amendment if: (1) they acted intentionally, knowingly, or recklessly when considering the consequences of their actions; (2) their actions were objectively unreasonable; and the plaintiff was injured by their actions or inactions. *See McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018); *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).

Bradac contends that he was not personally responsible for the failure to mask Helmueller because he didn't join Helmueller and Henricks in the jail sallyport until right before they left for the dentist visit, and because Henricks was the "transport officer" responsible for any decisions regarding masking or other safety issues. Helmueller argues that Bradac outranked Henricks, so it makes no sense that Henricks would be the one responsible for making safety decisions. I conclude that the precise division of the officers' duties is immaterial: case law makes clear that every officer with an opportunity to safeguard an inmate's constitutional rights is responsible for ensuring that those rights are not violated. *Stewardson v. Biggs*, 43 F.4th 732, 736 (7th Cir. 2022); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

Bradac also argues that the undisputed evidence defeats the specific claim that Helmueller alleged in his complaint: that Bradac didn't "provide[ Helmueller] a COVID mask . . . *prior* to [his] transport." Dkt. 1, at 3 (emphasis added). Bradac states that it is undisputed that Helmueller didn't ask for a mask before the transport as he alleged in his complaint. Rather, Helmueller now states that he asked Bradac for a mask only when they arrived in the office building. Bradac disputes whether Helmueller made this request, but in any event, Bradac contends that this request supports a claim not present in the original complaint.

I won't grant Bradac summary judgment on this specific argument for two reasons. First, Helmueller's claim wasn't that Bradac denied a specific request for a mask prior to transport;

5

it was that Bradac refused to give him with a mask, regardless whether Helmueller asked for one. And second, if the facts at summary judgment bore out that Helmueller really meant to bring a claim about Bradac's conduct upon their arrival at the dentist's office rather than their departure from the jail, I might allow Helmueller to amend his complaint rather than dismiss the entire case for his failure to plead his claim with sufficient precision.

Bradac argues that he should be granted summary judgment because he was unaware of a COVID risk: he was unaware of anyone at the jail or the dental staff having COVID. That undersells the risk of harm to Helmueller (or anyone else) during this part of the pandemic. Helmueller provides a printout from usafacts.org showing that COVID deaths in Wisconsin were relatively high in late December 2021 and early January 2022. Dkt. 108-1, at 2. Video footage captures Bradac and the dentist discussing COVID restrictions at area jails and how "crazy" the last two years had been. Dkt. 93-1, Exhibit 1D at 3:30–4:00. My own review of publicly available data confirms that Wisconsin COVID deaths and St. Croix County COVID cases spiked around this time.[1] Anyone in Bradac's situation would have been aware that there was a risk of COVID infection from being in indoor public spaces, and that a mask might mitigate that risk.

Nonetheless, even considering whether Bradac acted objectively unreasonably by (1) failing to proactively provide Helmueller with a mask before transport; or (2) denying Helmueller's request for a mask when they entered the office building, I conclude that Bradac is entitled to summary judgment because Helmueller fails to show that he was harmed by

---

[1]   See   https://covid.cdc.gov/covid-data-tracker/#trends_weeklydeaths_select_55   (weekly COVID deaths in Wisconsin); https://www.nytimes.com/interactive/2021/us/st-croix-wisconsin-covid-cases.html (St. Croix County new cases timeline).

Bradac's actions or inactions. Helmueller has the burden to show that Bradac's conduct actually caused him harm; the mere exposure to a risk that ultimately fails to materialize is not enough to support his claims. *Lord*, 952 F.3d at 905 ("risk is not compensable [for constitutional claim] without evidence of injury").

It is undisputed that Helmueller tested positive for COVID-19 about a week after his dental appointment. But that doesn't mean that he caught the virus at the appointment. Helmueller assumes that he did, but he doesn't provide any evidence showing that Bradac, Henricks, the dental staff, or anyone else in the vicinity had COVID-19 at the time. Helmueller states that he could not have caught COVID-19 any other way because he was placed in a single cell in administrative confinement upon his return. But Bradac notes that Helmueller still had contact with other jail staff during this time. Moreover, even assuming that Helmueller did catch COVID-19 at the dentist's office, a reasonable jury couldn't infer that he caught it because of Bradac's failure to give him a mask. Even had Helmueller worn a mask upon his arrival at the office, he would have had to take off the mask for his two tooth extractions. In short, Helmueller suspects that he contracted COVID-19 at the dental appointment and that the infection was caused by Bradac's failure to give him a mask, but his mere suspicion is not enough to support a reasonable jury finding that this is what happened. *See, e.g., Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While nonmovant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (citation omitted)).

Courts often observe that summary judgment requires the party with the burden of proof to "put up or shut up," pointing to evidence from which a reasonable jury could find in its favor of each element of its claim. *See, e.g., Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969,

973 (7th Cir. 2020). Regardless whether the decision to go to the appointment unmasked was wise, Helmueller's Fourteenth Amendment claim is doomed by his failure to present evidence that could lead a jury to find that Bradac's conduct caused his COVID infection. I will grant Bradac's motion for summary judgment and dismiss the case.[2]

ORDER

IT IS ORDERED that:

1. Plaintiff Sovereignty Joeseph Helmueller Sovereign Freeman's motion to strike, Dkt. 101, is DENIED.

2. Exhibits 1A, 1B, and 1E attached to Dkt. 93-1 shall remain sealed.

3. Defendant Joseph Bradac's motion for summary judgment, Dkt. 89, is GRANTED.

4. The parties' remaining motions are DENIED as moot.

5. The clerk of court is directed to enter judgment accordingly and close the case.

Entered July 10, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

---

[2] Bradac also contends that he is entitled to qualified immunity on Helmueller's claim. Because I am dismissing Helmueller's claim on the merits, I need not consider Bradac's qualified immunity argument.